## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY J. VIENS, PAMELA J. VIENS, KAREN L. WELLIKOFF, FINNEY LANE REALTY ASSOCIATES, LLC, and the CONNECTICUT FAIR HOUSING CENTER, <br><br> *Plaintiffs,* <br><br> v. <br><br> GREAT AMERICAN INSURANCE GROUP and AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, <br><br> *Defendants.* | Case No. 3:14-cv-952 |

## COMPLAINT

## NATURE OF THE ACTION

1.      Plaintiffs Jeffrey Viens, Pamela Viens, Karen Wellikoff, individually, Finney Lane Realty Associates, LLC, and the Connecticut Fair Housing Center, bring this action against Defendants Great American Insurance Group and American Empire Surplus Lines Insurance Company for declaratory, injunctive, and monetary relief.

2.      The defendants use insurance underwriting criteria that deny property insurance to landlords who lease their residential rental units to tenants using the Section 8 voucher program to help pay their rent.

3.      These underwriting criteria constitute unlawful source of income discrimination, as prohibited by the Connecticut Human Rights Act, General Statutes § 46a-63, *et seq.* (the "CHRA").  Further, these underwriting criteria have a discriminatory effect on persons on the basis of race and national origin in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.* (the "FHA") and the CHRA.

**PARTIES**

4.      Plaintiff Jeffrey Viens is a resident of Connecticut and a landlord who owns and leases units at residential rental properties in and around Willimantic, Connecticut.

5.      Plaintiff Pamela Viens is a resident of Connecticut and a landlord who owns and leases residential rental properties in and around Willimantic, Connecticut.

6.      Plaintiff Karen L. Wellikoff is a resident of Connecticut and member of Finney Lane Realty Associates, LLC.

7.      Plaintiff Finney Lane Realty Associates, LLC ("FLR, LLC") is a Connecticut limited liability whose members reside in Connecticut.  FLR, LLC is a residential property leasing company that owns a three-family property located at 10 Finney Lane, Stamford, Connecticut 06902 ("the Finney Lane Property").

8.      Plaintiff Connecticut Fair Housing Center ("CFHC") is a nonprofit corporation incorporated in Connecticut.  CFHC's office is located at 221 Main Street, Hartford, Connecticut 06106.

9.      Defendant Great American Insurance Group ("Great American") is an insurance company incorporated in Ohio, with its principal place of business in Cincinnati, Ohio, and authorized to do business in Connecticut.   Upon information, Great American is the parent company to several insurance subsidiaries.

10.      At all times relevant to the allegations in this complaint, Great American acted, refused to act, or otherwise failed to act through its agents and apparent agents, including without limitation American Empire Surplus Lines Insurance Company and its agents and employees. Defendant Great American is liable for the acts and/or omissions of its employees, agents and apparent agents.

2

11.     Defendant American Empire Surplus Lines Insurance Company ("American Empire") is an insurance company and a subsidiary of Great American.  American Empire is incorporated in Delaware, with its principal place of business in Cincinnati, Ohio, and authorized to do business in Connecticut.

12.     At all times relevant to the allegations in this complaint, American Empire acted, refused to act, or otherwise failed to act through its employees, agents, and apparent agents. Defendant American Empire is liable for the acts and/or omissions of its employees, agents, and apparent agents.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 3613(a), 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 2201.  In addition to supplemental jurisdiction over the state law claims, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because the plaintiffs are citizens of a different State than each of the defendants and the amount in controversy exceeds $75,000.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims alleged herein occurred within the state of Connecticut.

## FACTS

**I.      Overview of the Section 8 Voucher Program**

15.     Congress established the Section 8 Existing Housing Program ("Section 8 voucher program")—also referred to as the Housing Choice Voucher program—as part of the Housing and Community Development Act of 1974, Pub. L. No. 93-383, Title II, § 201(a), 88 Stat. 653, 662-66, now codified at 42 U.S.C. § 1437f and Housing Community and Development

Act of 1987, Pub. L. No. 100-242, § 143, 101 Stat. 1814, 1850 (1988), codified as amended at 42 U.S.C. § 1437f(o); see also 24 C.F.R. §§ 982.1 et seq.

16.     Under the Section 8 voucher program, the United States Department of Housing and Urban Development ("HUD") enters into annual contracts with local housing authorities, like the Willimantic Housing Authority, to fund Section 8 vouchers.  Housing assistance is then provided to families or individuals, and the participants are able to find their own housing in the private market.  Participants are not limited to units located in subsidized housing projects.  With Section 8 assistance, renters pay between 30% and 40% of their incomes for rent, and federal funding pays the remaining amount of rent to landlords.

17.     Participation in the Section 8 voucher program constitutes a "lawful source of income" under Connecticut General Statutes § 46a-63(3).

**II.     The Section 8 Voucher Program Participants in Connecticut Are Disproportionately Black or African-American, Hispanic or Latino, and Individuals with Disabilities**

18.     The population in Connecticut as a whole is 76.8% White non-Hispanic, 10.1% Hispanic or Latino, and 8.6% Black or African-American.

19.      There are approximately 39,198 Section 8 vouchers issued in the State of Connecticut.

20.     Black or African-American households are 12.9 times more likely to participate in the Section 8 voucher program in Connecticut than White non-Hispanic households.

21.     Hispanic or Latino households are 12.4 times more likely to participate in the Section 8 voucher program in Connecticut than White non-Hispanic households.

4

### III.   Plaintiffs Jeffrey and Pamela Viens

#### a.  The Viens' Real Estate Business

22.     Plaintiffs Jeffrey James Viens and Pamela Jane Viens are married and work together in the real estate business.

23.     The Viens invest in rental properties in Willimantic, Connecticut.  They typically purchase distressed properties, rehabilitate them, and then own and operate them as low- or middle-rent properties.  In several instances, the Viens have invested in multiple properties in close proximity.  By so doing, they have succeeded in stabilizing neighborhoods and providing affordable, safe, clean housing in Willimantic, Connecticut.

24.     Presently, Mr. Viens is the deed owner of approximately ten of their rental properties.  Mrs. Viens is the deed owner of one rental property.

25.     The Viens estimate that they each work between 40 and 50 hours per week managing their properties.

#### b.  The Oak-Bellevue-Milk Properties

26.     In 2004, Mr. Viens purchased 61 Bellevue Street, Willimantic, Connecticut 06226.  It has ten units.  At all times relevant, the property has had one tenant who uses a Section 8 voucher.

27.     In 2010, Mr. Viens purchased the property located at 14 Milk Street, Willimantic, Connecticut 06226.  It has three units.  At all times relevant, the property has had one tenant who uses a Section 8 voucher.

28.     In 2010, Mr. Viens purchased the property located at 12 Oak Street, Willimantic, Connecticut 06226.  It has three units.  At all times relevant, the property has had one tenant who

uses a Section 8 voucher.  The properties located at 12 Oak Street, 61 Bellevue Street, and 14 Milk Street are referred to collectively the "Oak-Bellevue-Milk Properties."

29.     All of the rental units at the Oak-Bellevue-Milk Properties fall within the 2014 Fair Market Rent ("FMR") limits for Willimantic, Connecticut.[1]

30.     At all relevant times up to April 1, 2014, the Oak-Bellevue-Milk Properties were insured together under a property policy issued by Defendant American Empire.

31.     The Viens maintain property insurance as a business necessity.

**c. Insurance for the Oak-Bellevue-Milk Properties from April 1, 2013 to April 1, 2014**

32.     On or around April 2013, Mr. Viens renewed the existing American Empire property insurance policy for the Oak-Bellevue-Milk properties.  The policy declarations page, forms, and endorsements for this policy, no. 13 CP 0171455, are referred to collectively as "the 2013 Property Insurance Policy."

33.     The 2013 Property Insurance Policy identified the Oak-Bellevue-Milk Properties as the "Premises" and named Jeffrey Viens as the insured.

34.     The policy period was from April 1, 2013 to April 1, 2014.

35.     The premium was shown as $3,849.00, payable at inception.  The declarations also listed $153.96 in state tax, a $50.00 policy fee, and a $65.00 inspection fee.

36.     After paying a deposit Mr. Viens began making timely monthly premium payments.

_____

[1] The Section 8 voucher program annually sets FMR values for different geographic areas within the United States.  These values limit the rental amount voucher recipients are permitted to pay. For a Section 8 voucher recipient to rent an apartment, it must, generally, fall below the FMR.

37.     Mr. Viens also had a separate general liability policy ("the 2013 CGL policy") through a different insurer for the Oak-Bellevue-Milk properties.  The yearly premium for this policy was $1,518.00 for the Oak-Bellevue-Milk properties.

**d.   The Defendants' Discrimination Concerning the Oak-Bellevue-Milk Properties**

38.     In January 2014, the Viens received a written notice of non-renewal from an agent of Defendant American Empire for the 2013 Property Insurance Policy.

39.     The Notice of Nonrenewal was scheduled to take effect on April 1, 2014.

40.     The Notice of Nonrenewal stated that the reason(s) for non-renewal of the policy was "RISK NO LONGER MEETS CARRIER UNDERWRITING GUIDELINES," and a handwritten note stated, "Subsidized Housing – Section 8."

41.     On January 16, 2014, an agent of Defendant American Empire stated in an email that "the carrier has requested that we send Notice of Non-Renewal on this account.  This is due to a change in carrier underwriting which limits the amount of subsidized housing eligible."

42.     The Viens were informed that the non-renewal was due to the number of tenants using housing subsidies at the Oak-Bellevue-Milk Properties.  As a result of the cancellation, the Viens were forced to find a replacement policy.

43.     The Viens were shocked and upset.  They were anxious and feared that they would experience difficulty finding replacement coverage before April 1, 2014.  They also felt that the new underwriting guidelines were unfair and discriminatory.

44.     The prospect of increased insurance costs, or of difficulty obtaining insurance to replace the non-renewed property insurance on three buildings, totaling sixteen units, created stress and anxiety for the Viens.

**e.  Harm to the Viens as a Result of the Defendants' Discriminatory Conduct**

45.     As a result of the aforedescribed policies, statements, and actions, the Viens began searching for a new property insurance policy for the Oak-Bellevue-Milk Properties.

46.     The Viens were unable to find a property insurance policy comparable to the 2013 Property Insurance Policy that would insure the Oak-Bellevue-Milk properties together.

47.     As a result, the Viens were forced to purchase separate property insurance policies for each of the three properties: 12 Oak Street, 61 Bellevue Street, and 14 Milk Street.

48.     In order to find a replacement for the 2013 Property Insurance Policy, the Viens were also forced to accept policy offerings that combined property insurance with general liability coverage.

49.     The three replacement policies, individually and in the aggregate, provide less favorable terms of insurance. For example, the 2013 Property Insurance Policy used a comprehensive ISO Commercial Building and Personal Property Coverage Form, with a Special Cause of Loss (all risk) Form endorsement and other endorsements. In contrast, the replacement property coverage policies are basic Dwelling Fire policies, which cover only limited, named perils.  The Viens' replacement insurance therefore has less favorable coverage, more exclusions, and differing endorsements.

50.     In addition to less favorable terms, the Viens' insurance premiums for the Oak-Bellevue-Milk Properties have increased from approximately $3,900 per year under the 2013 Property Insurance Policy and $1,500 per year under the 2013 CGL policy to more than $6,500 per year for the three replacement policies.

IV.   **Plaintiffs FLR, LLC and Karen Wellikoff**

      a.   **FLR, LLC Real Estate Business**

51.   Plaintiff Karen Wellikoff owns and operates both commercial and residential rental properties in southern Connecticut.

52.   On or about July 1, 2004, Ms. Wellikoff and Helen Bossack purchased the Finney Lane Property.

53.   On or about July 27, 2005, Ms. Wellikoff and Ms. Bossack transferred ownership of the Finney Lane Property to FLR, LLC.  FLR, LLC has two members: Ms. Wellikoff and Ms. Bossack.  Since the transfer of the Finney Lane Property to FLR, LLC, Ms. Wellikoff has acted as the managing member of FLR, LLC.

54.   The ownership and rental of the Finney Lane Property is the only business conducted by FLR, LLC.

55.   FLR, LLC and Ms. Wellikoff maintain property insurance as a business necessity.

      2.   **The Finney Lane Property**

56.   At all relevant times, FLR, LLC has rented to tenants at the Finney Lane Property who use Section 8 program vouchers.

57.   The Finney Lane Property has three units.  There are two two-bedroom units that each rent for $1200 per month.  There is also one three-bedroom unit that rents for $2000 per month.   All three units fall within the 2014 FMR limits for Stamford, Connecticut.

      3.   **Insurance for the Finney Lane Property from August 2012 to August 2013**

58.   On or about August 2012, the existing property and commercial general liability insurance policies for the Finney Lane Property required renewal.  Ms. Wellikoff's insurance

agency offered new policies from Defendant American Empire, policy no. 12 CP 27445 (Standard Fire) and policy no 12 CG 73365 (Commercial General Liability).

59. These policies identified the Finney Lane Property as the Premises and named both Karen L. Wellikoff and the property manager, Robert DeFalco, as the insured.

60. The policies period was from August 30, 2012 to August 30, 2013.

61. The combined premium for both policies was $3,338.00.

62. After paying a deposit in September 2012, Ms. Wellikoff and FLR, LLC began making timely monthly premium payments.

**4.     The Defendants' Discriminatory Conduct Concerning FLR, LLC and Ms. Wellikoff**

63. On or about November 2012, an inspector visited the Finney Lane Property.  The inspector was, upon information and belief, an agent of Great American.

64. The inspector asked the property manager whether the Finney Lane Property currently had any "Section 8 tenants."

65. The property manager replied that two of the three units at the Finney Lane Property had tenants utilizing Section 8 program vouchers and that they were good tenants and good people.

66. Upon information and belief, the inspector noted the presence of the tenants using Section 8 program vouchers in his report.

67. On or about November 2, 2012, an underwriter at Defendant American Empire told Ms. Wellikoff's insurance broker that, based on an earlier email from the insurance broker, "there was no subsidized housing [at the Finney Lane Property]."  Because the inspection report

indicated that "2 of the 3 units are subsidized housing," American Empire would require either payment of an additional premium of $575 or a Notice of Cancellation to be sent.

68.     On or about March 2013, FLR, LLC's agent and property manager was notified by an agent of Great American, the Malloy Agency ("Malloy"), that Ms. Wellikoff would be required to pay the increased premium or both her property and liability policies with the defendants would be canceled.

69.     FLR, LLC's agent and property manager informed Malloy that the defendants' underwriting criteria constituted illegal discrimination on the basis of lawful source of income and refused to pay the additional premium.

70.     In April, May, June, and July of 2013, the defendants, through Malloy, continued to demand that Ms. Wellikoff pay the increased premium.  Each time, FLR, LLC's agent and property manager refused the defendants' demand because of the belief that it was based on discriminatory underwriting criteria.

71.     In July 2013, FLR, LLC's agent and property manager asked Malloy to have the defendants send an email reflecting the demand for an increased payment.  At that time, the November 2, 2012 email written by an underwriter at Defendant American Empire was forwarded to FLR, LLC's agent and property manager.

72.     In August 2013, Ms. Wellikoff received a written Notice of Cancellation effective August 21, 2013 for FLR, LLC's property insurance policy issued by American Empire, 12 CP 27445.

73.     Because of FLR, LLC's refusal to comply with the defendants' unlawful demand for payment of an additional premium based on the presence of tenants participating in the Section 8 voucher program, the defendants cancelled the property insurance policy for the

Finney Lane Property.   The Notice of Cancellation listed "non payment of premium for endo[r]sement to agent" as the reason for cancellation of the policy.

74.    The defendants also failed to renew FLR, LLC's commercial general liability policy issued by American Empire, 12 CG 73365.

### 5.    Harm to FLR, LLC and Ms. Wellikoff as a Result of the Defendants' Discriminatory Conduct

75.    Ms. Wellikoff and FLR, LLC were forced to operate the Finney Lane Property without property insurance coverage for approximately four weeks, and without liability insurance coverage for approximately three weeks, until September 18, 2013.

76.    Ms. Wellikoff was very distressed about operating her rental property without property or liability insurance.  During that time she worried constantly about the uninsured exposure of the Finney Lane Property.

77.    Ms. Wellikoff and FLR, LLC eventually located replacement property and liability insurance policies for the Finney Lane Property.  The replacement policies (issued by Harleysville Insurance) provide less favorable terms of insurance.  For example, the deductible for property policy 12 CP 27445 issued by the defendants was only $2,500. In contrast, the deductible for the Harleysville replacement property policy is $5,000.  The annual premium for the general liability policy issued by the defendants was only $338.00. In contrast, the annual premium for the Harleysville replacement general liability policy is $500.00.  The Harleysville replacement general liability policy also contains one or more coverage exclusions that were not excluded by the liability policy issued by the defendants.

V.      **Plaintiff Connecticut Fair Housing Center (CFHC)**

1.      **CFHC's Focus On the Rights of Tenants In the Rental Housing Market and Individual Borrowers Facing Foreclosure**

78.     CFHC is a statewide nonprofit civil rights organization dedicated to ensuring that all people have equal access to housing opportunities in Connecticut.  The Center focuses on the intersection of housing discrimination and poverty, because housing discrimination disproportionately affects people with low incomes.  The Center also assists Connecticut homeowners who have been hit hardest by the nation's ongoing home foreclosure crisis.

79.     CFHC challenges and seeks to eliminate discrimination in housing through education, research, testing, counseling, advocacy, and enforcement.

80.     For several years, CFHC has experienced a high volume of individuals alleging discrimination based upon their lawful source of income.

2.      **Diversion of CFHC's Resources and Frustration of its Mission**

81.     The aforedescribed discriminatory underwriting criteria employed by Great American and American Empire have frustrated and continue to frustrate CFHC's mission of ensuring that all people have equal access to housing opportunities in Connecticut.

82.     Underwriting criteria that compel landlords to refuse to accept or restrict acceptance of tenants using housing subsidies is something CFHC has only sporadically dealt with in the past.  In recent months, however, CFHC has begun to divert its scarce resources and staff away from other activities and direct them towards investigating and counteracting the underwriting criteria employed by the defendants, because they constitute unlawful discrimination on the basis of source of income, and have a disparate impact on statutorily-defined protected classes.

83.     CFHC's mission is frustrated when *additional* impediments are created by an insurance company that make it more difficult and more expensive for landlords to accept housing subsidies.  Specifically, CFHC's mission is frustrated by Great American's and American Empire's discriminatory underwriting criteria.

84.     To address the defendants' discrimination, CFHC has engaged in a community outreach campaign, which included distributing hundreds of flyers, handouts, and/or brochures to real estate professionals in both Windham and Fairfield Counties.  Additionally, staff have been trained to conduct and have conducted informational talks for real estate professionals about the defendants' illegal insurance underwriting criteria.  Considerable administrative resources have gone toward creating materials for distribution, logistics, and coordinating outreach efforts.  In order to finance these activities, CFHC has used a significant amount of money from its reserves. In the absence of the defendants' discriminatory underwriting criteria, CFHC would have devoted its scarce time and resources to other activities.

**INJURIES**

85.     Due to the defendants' use of discriminatory and unlawful underwriting criteria, the plaintiffs have suffered and will in the future suffer injury, including economic losses, inconvenience, anxiety, stress, embarrassment, humiliation, and other emotional distress, and violation of their civil rights.  Accordingly, the plaintiffs are entitled to compensatory damages.

86.     The defendants' unlawful actions described above were, and are, intentional, willful, and knowing, and/or have been, and are, implemented with callous and reckless disregard for the plaintiffs' rights under state law.  Accordingly, the plaintiffs are entitled to punitive damages under state law.

14

87. The defendants' use of discriminatory and unlawful underwriting criteria have impaired and frustrated CFHC's mission to eliminate discriminatory housing practices and assure equal housing opportunities.

88. The defendants' refusal to insure properties with tenants using housing subsidies, or inflation of the cost of insurance for such properties, is frustrating CFHC's mission to foster open and inclusive communities and eliminate housing discrimination throughout Connecticut.

89. There now exists an actual controversy between the parties regarding the defendants' duties under federal and state fair housing laws. Accordingly, the plaintiffs are entitled to declaratory relief under federal and state law.

90. Unless enjoined, the defendants and their agents or employees will continue to engage in unlawful acts and the pattern or practice of discrimination described herein. The plaintiffs have no adequate remedy at law. The plaintiffs are now suffering and will continue to suffer irreparable injury from the defendants' acts and the pattern or practice of discrimination unless relief is provided by this Court. Accordingly, the plaintiffs are entitled to injunctive relief under federal and state law.

## CAUSES OF ACTION

### Count One:
### Discrimination Based on Lawful Source of Income In Violation of
### Connecticut General Statutes § 46a-63, *et seq.*

91. The plaintiffs reallege and reincorporate by reference each paragraph previously alleged in this complaint.

92. The defendants' policy and practice of using the presence of tenants utilizing Section 8 vouchers as an underwriting criterion for property insurance violates the CHRA in the following ways:

15

93.     First, the defendants have discriminated in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of lawful source of income, in violation of Conn. Gen. Stat. § 46a-64c(a)(2).

94.     Second, the defendants have made, printed, or published, or caused to be made, printed, or published notices, statements, or advertisements with respect to the rental of a dwelling that indicate a preference, limitation, or discrimination based on lawful source of income, in violation of Conn. Gen. Stat. § 46a-64c(a)(3).

95.     Third, the defendants have made a residential real-estate-related transaction unavailable based on lawful source of income, in violation of Conn. Gen. Stat. § 46a-64c(a)(7).

96.     Fourth, the defendants have, while engaging in a residential real-estate-related transaction, discriminated in the terms or conditions of such a transaction based on lawful source of income, in violation of Conn. Gen. Stat. § 46a-64c(a)(7).

97.     Fifth, the defendants have coerced, intimidated, threatened, or interfered with a landlord's exercise or enjoyment of his right and obligation to rent to individuals without consideration for their lawful source of income, in violation of Conn. Gen. Stat. § 46a-64c(a)(9).

98.     The plaintiffs have been injured by the defendants' discriminatory conduct and have suffered damages as a result.

99.     The defendants' conduct was intentional, willful, and made in reckless disregard for the known rights of others.

**Count Two:**
**Discrimination Based on Race and National Origin In Violation of**
**Connecticut General Statutes § 46a-63, *et seq.***

100.    The plaintiffs reallege and reincorporate by reference each paragraph previously alleged in this complaint.

101.    As set forth above, the defendants' insurance underwriting criteria deny coverage or inflate the price of coverage for housing where individuals utilizing Section 8 vouchers live.

102.    As a result, the defendants' use of discriminatory insurance underwriting criteria actually or predictably results in a significantly disproportionate impact on the basis of race and national origin (the "State Law Protected Groups"), to the harm and detriment of CFHC, and certain landlords that offer housing opportunities to tenants and applicants protected under federal and state housing laws, including Jeffrey Viens, Pamela Viens, Karen Wellikoff, and FLR, LLC.

103.    The defendants' underwriting criteria, described above, if facially neutral, have had and continue to have a discriminatory impact on State Law Protected Groups in Connecticut, in violation of the CHRA.

104.    These underwriting criteria predictably and disproportionately harm the State Law Protected Groups because they are each more likely to participate in the Section 8 program in Connecticut than are the relevant non-protected groups.

105.    The defendants' underwriting criteria also predictably and disproportionately harm neighborhoods where African-American or Black and/or Hispanic or Latino individuals are statistically more likely to live.

106.    The defendants' underwriting criteria do not have a substantial, legitimate, nondiscriminatory objective.

17

107.    The defendants could have used less discriminatory underwriting criteria to achieve the same business purpose.

108.    The plaintiffs have been injured by the defendants' discriminatory conduct and have suffered damages as a result.

### Count Three:
### Discrimination Based on Race and National Origin In Violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

109.    The plaintiffs reallege and reincorporate by reference each paragraph previously alleged in this complaint.

110.    As set forth above, the defendants' insurance underwriting criteria deny coverage or inflate the price of coverage for housing where individuals utilizing Section 8 vouchers live.

111.    As a result, the defendants' use of discriminatory insurance underwriting criteria actually or predictably results in a significantly disproportionate impact on the basis of race and national origin (the "Federally Protected Groups"), to the harm and detriment of CFHC, and certain landlords, including Jeffrey Viens, Pamela Viens, Karen Wellikoff, and FLR, LLC, that offer housing opportunities to tenants and applicants protected under federal and state housing laws.

112.    The defendants' underwriting criteria, described above, if facially neutral, have had and continue to have a discriminatory impact on Federally Protected Groups in Connecticut, in violation of 42 U.S.C. §§ 3604(b), 3605, and 3617.

113.    These underwriting criteria predictably and disproportionately harm the Federally Protected Groups because they are each more likely to participate in the Section 8 program in Connecticut than are the relevant non-protected groups.

18

114.     The defendants' underwriting criteria also predictably and disproportionately harm neighborhoods where African-American or Black and/or Hispanic or Latino individuals are statistically more likely to live.

115.     The defendants' underwriting criteria do not have a substantial, legitimate, nondiscriminatory objective.

116.     The defendants could have used less discriminatory underwriting criteria to achieve the same business purpose.

117.     The plaintiffs have been injured by the defendants' discriminatory conduct and have suffered damages as a result.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiffs respectfully request that judgment be entered against the defendants as follows:

(a) Declaring that the defendants' refusal to insure landlords who rent to tenants who utilize Section 8 vouchers, or charging such landlords higher rates, violates the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, and the Connecticut Human Rights Act, Conn. Gen. Stat. Ann. § 46a-64c;

(b) Permanently enjoining the defendants, their agents, employees, successors, and all other persons in active concert or participation with them from refusing to insure, or canceling the insurance of, or charging higher insurance rates to landlords on the ground that they rent to tenants who utilize Section 8 vouchers;

(c) Requiring the defendants, their agents, employees, successors, and all other persons in active concert or participation with them to develop and implement policies,

19

practices, and procedures that do not discriminate against persons protected by the

fair housing laws;

(d) Awarding all available damages to the plaintiffs, including but not limited to punitive

damages in an amount that would punish the defendants for the willful, wanton, and

reckless conduct alleged herein and that would effectively deter similar conduct in the

future;

(e) Awarding reasonable attorneys' fees and costs under 42 U.S.C. § 3613(c) and Conn.

Gen. Stat. Ann. § 46a-104; and

(f) Awarding such other and further relief as this Court may deem just and proper.


Dated:  June 30, 2014

                                             Respectfully submitted,


                                             /s/ Timothy M. Smyth_____
                                             Timothy M. Smyth [ct27615]
                                             Stephen M. Dane*
                                             Jean M. Zachariasiewicz*
                                             RELMAN, DANE & COLFAX, PLLC
                                             1225 19th St., NW, Suite 600
                                             Washington, D.C. 20036-2456
                                             Tel: (202) 728-1888
                                             Fax: (202) 728-0848
                                             Email: tsmyth@relmanlaw.com
                                                      sdane@relmanlaw.com
                                                      jzachariasiewicz@relmanlaw.com


                                             *Counsel for Jeffrey Viens, Pamela Viens,*
                                             *Karen Wellikoff, and Finney Lane Realty*
                                             *Associates, LLC*


                                             * *Pro hac vice* admission to be sought


                                             Greg Kirschner [ct26888]
                                             THE CONNECTICUT FAIR HOUSING CENTER
                                             221 Main St., 4th Floor

Hartford, CT 06106
Tel: (860) 263-0728
Fax: (860) 247-4236
Email: greg@ctfairhousing.org

*Counsel for Connecticut Fair Housing Center*